J-A21016-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: M.K. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: M.K. | |
| | No. 504 EDA 2013 |

Appeal from the Dispositional Order December 18, 2012
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-JV-0003810-2012

BEFORE:  BOWES, J., OTT, J., and STRASSBURGER, J.[*]

MEMORANDUM BY OTT, J.:                    **FILED OCTOBER 01, 2014**

M.K. appeals from the dispositional order, entered on December 18, 2012, in the Family Division, Juvenile Branch, of the Court of Common Pleas of Philadelphia County, after he was adjudicated delinquent of possession with intent to deliver a controlled substance (PWID), and possession of a controlled substance.[1]  The court ordered M.K. to remain at Mid Atlantic Western PA Child Care.  M.K. challenges (1) the denial of his suppression motion, and (2) the sufficiency of the evidence.  Based upon the following, we affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 35 P.S. § 780-113(a)(30), (a)(16), respectively.

The juvenile court has aptly summarized the evidence, which was presented at the suppression hearing, as follows:

> During the course of the hearing held on a Motion to Suppress on [December] 18, 2012, this Court heard testimony from one witness, Philadelphia Police Officer Ernest Brown.
>
> Officer Ernest Brown, Badge Number 926, testified that he was assigned to the Narcotics Field Unit North on August 1, 2012 and that he and his partner, Officer Sumpter came in contact with [M.K.] on that date. Officer Brown identified [M.K.] in court.
>
> The Narcotics Unit was investigating potential narcotics sales at 3269 Byberry Road in Philadelphia on July 31, 2012 and witnessed suspected sales by several males. On August 1, 2012, the Narcotics Unit obtained a search warrant for that address. The search warrant identified several items to be searched for and seized, including narcotics, paraphernalia, and weapons.
>
> While the Philadelphia Police officers were executing a valid search warrant, [M.K.], who was not initially present in the home, walked up on to the porch of the house. According to the police report admitted by stipulation of the counsel, Officer Sumpter observed a bulge in the right hand pocket of [M.K.]. The police officer then stopped [M.K.] and patted him down for his own personal safety and the safety of his fellow officers. On the porch, Officer Sumpter stopped and frisked [M.K.]. After patting [M.K.] down, the officer recognized the bulge to be narcotics and recovered sixteen (16) Ziploc bags, each containing marijuana.

Juvenile Court Opinion, 9/25/2013, at 4–5 (record citations omitted).

After hearing argument on the motion to suppress, the juvenile court denied the motion and the matter proceeded to an adjudicatory hearing, where the Commonwealth incorporated the suppression testimony with respect to all nonhearsay testimony from Officer Brown and stipulations from the Philadelphia Police Department Arrest Report ("PARS"), and introduced

property receipts and seizure analyses. *See* N.T., 12/18/2012, at 34–35. Thereafter, the court adjudicated M.K. delinquent of PWID, possession, and conspiracy,[2] and ordered him to remain at Mid Atlantic Western PA Child Care. Subsequently, in response to the post-dispositional motion filed by M.K., the court vacated the adjudication of delinquency based upon conspiracy only, and this appeal followed.[3]

The first issue raised by M.K. is a challenge to the denial of his suppression motion. M.K. asserts police "frisked [him] without reasonable suspicion that he was armed and dangerous where he was merely present as a visitor during the execution of a search warrant, he had no involvement in the drug activity under investigation, and police saw a bulge in his pocket but did not observe him behaving in an unusual, suspicious, or furtive manner." M.K.'s Brief at 11. M.K. argues "[his] mere presence in the home during the execution of the search warrant does not justify frisking him. Nor does an innocuous bulge in his pocket establish a *per se* basis for suspecting that he was armed and dangerous." *Id.* at 14.

Our standard of review is well settled:

_____

[2] 18 Pa.C.S. § 903.

[3] M.K. timely filed a concise statement of errors complained of on appeal, in accordance with Pa.R.A.P. 1925(b), and, a petition for extension of time, which was granted by the juvenile court. M.K. subsequently filed a supplemental statement, following transcription of the notes of testimony.

In addressing a challenge to a trial court's denial of a suppression motion, we are limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Since the Commonwealth prevailed in the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as it remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

**Commonwealth v. Scarborough**, 89 A.3d 679, 683 (Pa. Super. 2014) (citations omitted).

The facts set forth above, as found by the juvenile court, are supported by the record, and therefore we turn to examine the court's legal conclusions. The juvenile court explained the rationale for its ruling as follows:

It is well established that a police officer may briefly detain an individual and conduct a pat-down search for weapons if the officer[] has "reasonable articulable suspicion" that an individual is armed and dangerous. **Terry v Ohio**, 392 U.S. [1], 88 S. Ct. 1868, 20 L.Ed. [2d] 889 (1968). In order to justify a protective pat-down search or "frisk" for weapons, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts reasonable warrant the intrusion." 392 U.S. at 21.

In **Terry**, the Unites States Supreme Court emphasized that the "sole justification for the frisk" is the protection of the officer and others nearby, and it must be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs or other hidden [instruments] for the assault of the police officer. **Id.** at 29. To determine whether the search in this case was reasonable, the Court must evaluate the totality of the circumstances and the need to balance the need for the search against the degree of the intrusion it entails.

Nothing in **Terry** can be understood to allow a generalized "cursory search or patdown" or indeed, any search whatever for anything but weapons. The "narrow scope" of the **Terry** exception does not permit a frisk for weapons on less than a reasonable suspicion or belief directed at the person to be frisked, even though that person happens to be on the premises when an authorized narcotics search is taking place. **Ybarra v. Illinois**, 444 U.S. 85, 100 S. Ct. 338, 62 L. Ed. 2d 238 (1979).

In considering whether the Police Officer Sumpter possessed the requisite suspicion to frisk [M.K.] for weapons, the Court found that the police officer had no specific knowledge or information that [M.K.] might have drugs on his person before he frisked [M.K.] for weapons. The Police Officer Sumpter observed a "bulge" and it was the "sole justification" for the frisk to protect the police officers. The initial pat-down search of [M.K.] was confined in a reasonable intrusion reasonably designed to uncover guns, or other hidden objects, that could be used to assault of the police officers who were in the process of executing a search warrant at 3269 Byberry Road in Philadelphia, PA.

Juvenile Court Opinion, **supra**, at 7-8.

For the following reasons, we find no error in this analysis.

It is well-established that a police officer may conduct a brief investigatory stop of an individual if the officer observes unusual conduct which leads him to reasonably conclude that criminal activity may be afoot. Moreover, if the officer has a reasonable suspicion, based on specific and articulable facts, that the detained individual may be armed and dangerous, the officer may then conduct a frisk of the individual's outer garments for weapons. Since the sole justification for a **Terry** search is the protection of the officer or others nearby, such a protective search must be strictly limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby. Thus, the purpose of this limited search is not to discover evidence, but to allow the officer to pursue his investigation without fear of violence.

***Scarborough, supra***, 89 A.3d at 683 (citations omitted).

Furthermore,

> [a]n overt threat by the suspect or clear showing of a weapon is not required for a frisk. It is well-established that "[t]he officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger."

***Commonwealth v. Mack***, 953 A.2d 587, (Pa. Super. 2008) (citations omitted).

Here, M.K.'s arguments asserting his "mere presence" and "innocuous bulge" are based upon the facts taken in isolation. We recognize "a police officer must have a particularized, objective basis for a protective search; an individual's mere proximity to others engaged in criminal activity is insufficient" to justify a protective search. ***Commonwealth v. Grahame***, 7 A.3d 810, 817 (Pa. 2010) (finding search of appellant's purse was unreasonable when she was sitting in the living room during consent search of a house where another person had sold illegal drugs ten minutes prior; disapproving a "guns follow drugs" presumption in order to justify a protective search for weapons"). However, the appropriate analysis requires the suppression court to view the facts in the light of the totality of the circumstances. ***See Commonwealth v. Simmons***, 17 A.3d 399, 403 (Pa. Super. 2011), *appeal denied*, 25 A.3d 328 (Pa. 2011) ("In order to determine whether the police had reasonable suspicion, the totality of the circumstances — the whole picture — must be considered.").

The Commonwealth's evidence regarding the frisk and recovery of drugs from M.K. was entered into evidence by stipulation between counsel as to the contents of the police report, known as the PARS. The PARS states, in relevant part:

> During the execution of the search warrant[,[4]] a male identified as [M.K.] walked into the residence and was stopped by P/O Brown #1926. The officer arrested this male after the officer observed a bulge in his right hand shorts pocket.[5] The officer patted him down and immediately recognized the bulge to be narcotics. Recovered was a clear plastic baggie containing sixteen (16) clear zip lock packets with green markings on one side each containing marijuana. Also recovered from the same pocket was $15.00 US currency.

Exhibit C-1, PARS. *See* N.T., 12/18/2012, at 19–20. Contrary to the position of M.K., the Commonwealth's evidence comprises specific, articulable facts from which the officer could reasonably infer that M.K. was a safety threat. While M.K. characterizes the evidence in terms of his "mere

---

[4] The PARS does not indicate the precise time of the execution of the search warrant. The PARS indicates that at 7:25 p.m. the resident of the house, who was under surveillance, exited the house, met and entered a vehicle across the street, and police converged on the scene as a drug transaction was occurring in the vehicle. After arrests were made of the resident, driver and passenger of the vehicle, the search warrant for the residence was executed, and at that time, M.K. entered the residence. *See* Exhibit C-1, PARS.

[5] At the suppression hearing, Officer Brown testified that he did not stop M.K., and that it was Officer Sumpter who had "stopped" and frisked M.K., and made the recovery. N.T., 12/18/2012, at 11. We note that there is no contention in this case that M.K. was placed under arrest prior to the pat-down.

presence" and an "innocuous bulge," under the totality of the circumstances analysis, innocent facts, when taken together, may warrant further investigation.[6] **See Terry**, 392 U.S. at 22.

Nor are we persuaded by the argument of M.K. that "the minimalist record is devoid of even the officer's own assertion that he believed — whether reasonably or not — that [M.K.] was armed and dangerous." M.K.'s Brief at 16. In this regard, we note that this Court has instructed: "Reasonable suspicion is based upon an objective standard, not subjective intent." **Commonwealth v. Foglia**, 979 A.2d 357, 361 (Pa. Super. 2009)

_____

[6] The noticeable bulge in M.K.'s pocket distinguishes the present case from **Grahame**, wherein the Pennsylvania Supreme Court determined that "the courts below erred in concluding that Officer Russell had reasonable suspicion to conduct a protective search of Appellant's handbag pursuant to **Terry**." 7 A.3d at 817. The **Grahame** Court explained:

> By her own admission, Officer Russell conducted a protective search of Appellant's purse based on a generalization that firearms are commonly found in close proximity to illegal drugs. No one from the task force knew if Appellant had a criminal record, and there was no indication that D.W. and Appellant were involved in a common enterprise. Indeed, the police witnessed a single drug transaction, and it occurred outside of Appellant's presence. Furthermore, upon entering the house, Officer Russell did not detect any unusual behavior or furtive movements on Appellant's part **nor did she observe a suspicious bulge in Appellant's purse.** Since the Commonwealth failed to elicit any facts that supported an objectively reasonable belief that Appellant was armed and dangerous, the Superior Court's decision cannot be sustained.

**Id.** at 817 (emphasis added) (footnote and citation omitted).

(*en banc*), *appeal denied*, 990 A.2d 727 (Pa. 2010). The **Foglia** Court opined:

> As the United States Supreme Court noted in **Maryland v. Macon,** 472 U.S. 463, 470-471, 105 S. Ct. 2778, 86 L. Ed. 2d 370 (1985), "Whether a Fourth Amendment violation has occurred 'turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time,' **Scott v. United States,** 436 U.S. 128, 136, 98 S.Ct. 1717, 1722, 56 L.Ed.2d 168 (1978), and not on the officer's actual state of mind at the time the challenged action was taken. **Id.** at 138 and 139, n.13, 98 S.Ct. at 1724, n.13."

**Id.** at 361. Therefore, M.K.'s argument regarding the absence of testimony regarding the officer's subjective intent is unavailing.

Furthermore, although M.K. relies on **Commonwealth v. Cartagena**, 63 A.3d 294 (Pa.Super. 2013), *appeal denied*, 70 A.3d 808 (Pa. 2013), we find the present case is distinguishable from **Cartagena**. In **Cartagena**, this Court held the nervousness of the driver, stopped late at night for a suspected tinted window violation, was insufficient justification for police to conduct a **Terry** frisk and a protective weapons search of the vehicle. The **Cartegena** Court, in reaching its conclusion, explained:

> **Absent some combination of evidence to give context to the encounter** - for example, testimony that the stop occurred in a high-crime area; testimony regarding Officer Johncola's training and experience and its role in formulating a reasonable suspicion that Cartagena was armed and dangerous; and/or testimony illuminating the length of the delay in Cartagena lowering his windows - we cannot overturn the suppression court's decision to suppress the gun found during the search of the passenger compartment of the vehicle. To do so would require an unwarranted expansion of police officers' ability to conduct **Terry** frisks and protective vehicle searches, and a

> concomitant erosion of the rights of citizens of Pennsylvania to be free of unreasonable search and seizure.

*Cartagena, supra*, 63 A.3d at 306 (footnote omitted) (emphasis added).

Here, there is a combination of evidence, namely, that M.K. walked onto the porch of a house where suspected drug trafficking was occurring, during the execution of a search warrant, and at that time police observed a bulge in his pocket. Viewing these facts in the light of "the totality of the circumstances," we find no basis upon which to disturb the ruling of the juvenile court that determined the protective frisk in this case was constitutionally permissible.

M.K. next challenges the sufficiency of the evidence as to his conviction for possession with intent to deliver a controlled substance.

> In evaluating a challenge to the sufficiency of the evidence supporting an adjudication of delinquency, our standard of review is as follows:

> > When a juvenile is charged with an act that would constitute a crime if committed by an adult, the Commonwealth must establish the elements of the crime by proof beyond a reasonable doubt. When considering a challenge to the sufficiency of the evidence following an adjudication of delinquency, we must review the entire record and view the evidence in the light most favorable to the Commonwealth.

> > In determining whether the Commonwealth presented sufficient evidence to meet its burden of proof, the test to be applied is whether, viewing the evidence in the light most favorable to the Commonwealth, and drawing all reasonable inferences therefrom, there is sufficient evidence to find every element of the crime charged. The Commonwealth may sustain its burden of proving every

element of the crime beyond a reasonable doubt by wholly circumstantial evidence.

The facts and circumstances established by the Commonwealth need not be absolutely incompatible with a defendant's innocence. Questions of doubt are for the hearing judge, unless the evidence is so weak that, as a matter of law, no probability of fact can be drawn from the combined circumstances established by the Commonwealth.

*In re V.C.*, 66 A.3d 341, 348–349 (Pa. Super. 2013) (citation omitted), *appeal denied*, 80 A.3d 778 (Pa. 2013).

M.K. contends that the amount of marijuana found on his person,[7] "in conjunction with other surrounding circumstances, such as the fact that he had only fifteen dollars and no drug selling paraphernalia, only weakens the inference that [he] intended to sell the marijuana in his pocket." M.K.'s Brief at 19-20. M.K. further asserts "the most significant factor undermining the conclusion that [M.K.] intended to sell marijuana is the absence of any expert testimony to that effect." M.K.'s Brief at 20. Our review, however, leads us to conclude that these arguments fail to present any basis upon which to overturn the decision of the juvenile court.

_____

[7] M.K. argues that the total amount of marijuana in the 16 baggies — "just over fifteen grams" — equals half of a "small amount of marijuana," i.e., 30 grams of marijuana, as defined by the Pennsylvania Legislature in 35 P.S. § 780-113(a)(31) ("possession of small amount of marijuana"), and punishable by a maximum of thirty days' imprisonment under 35 P.S. § 780-113(g). **See** M.K.'s Brief at 19.

With regard to PWID, evidence is sufficient "where the Commonwealth proves beyond a reasonable doubt that the defendant possessed a controlled substance he was not licensed to possess, and that he did so under circumstances demonstrating an intent to deliver that substance." **In the Interest of R.N.**, 951 A.2d 363, 367 (Pa. Super. 2008) (citations omitted). "Factors which may be relevant in establishing PWID include the form of the drug, the particular method of packaging, and the behavior of the defendant." **Commonwealth v. Bricker**, 882 A.2d 1008, 1015 (Pa. Super. 2005) (citation omitted). Furthermore,

> [a]lthough expert testimony can be beneficial, it is by no means necessary. Pointedly, while many cases have opined that expert testimony is an important consideration in determining whether a person intended to deliver a controlled substance, no case has ever held that the absence of such testimony automatically renders the evidence insufficient to sustain a PWID conviction. ***Indeed, determining whether a person possesses a drug for personal use or with intent to deliver is based upon the totality of circumstances. Commonwealth v. Ratsamy***, 594 Pa. 176, 934 A.2d 1233 (Pa. 2007). In ***Ratsamy***, the Supreme Court opined,

>> The amount of the controlled substance is not "crucial to establish an inference of possession with intent to deliver, if ... other facts are present." **Commonwealth v. Ariondo**, 397 Pa.Super. 364, 580 A.2d 341, 350—51 (1990). The Superior Court's own cases follow this reasoning. ***See, e.g., Commonwealth v. Brown***, 2006 PA Super 177, 904 A.2d 925, 931—32 (Pa.Super. 2006), *appeal denied,* 591 Pa. 710, 919 A.2d 954 (2007) (the totality of the circumstances established sufficient evidence to support a conviction for possession with intent to deliver); **Commonwealth v. Drummond**, 2001 PA Super 122, 775 A.2d 849, 853—54 (Pa.Super. 2001), *appeal denied,* 567 Pa. 756, 790 A.2d 1013 (2001) (the Commonwealth may establish the essential elements of

the crime wholly by circumstantial evidence; the court looks to all facts and circumstances in each case surrounding the possession of the controlled substance).

*Id.* at 1237.

***Commonwealth v. Watley, supra***, 81 A.3d 108, 114–115 (Pa. Super. 2013) (emphasis added), *appeal denied*, ___ A.3d ___ (Pa. 2014).

The juvenile court, in reaching its conclusion that M.K. had the intent to deliver, considered (1) that the marijuana was bagged individually, (2) that M.K. was also observed by Officer Brown and identified as a potential target for arrest for selling narcotics during an investigation the day before his arrest, and (3) that M.K. entered a home where drug sales were occurring, while carrying the sixteen (16) individual bags of marijuana. Our review leads us to conclude the record supports the court's first and third considerations, and we agree with the court's determination.[8]

While M.K. argues the fact of "the individual bags of marijuana" carries little weight, and "[M.K's] presence in a drug house has little bearing," these arguments are again based upon the facts viewed piecemeal, rather than in the light of the totality of the circumstances. ***See Watley, supra***. Furthermore, our standard of review requires us to view the evidence presented at the hearing, and all reasonable inferences derived therefrom, in

---

[8] With regard to the court's second consideration, we note the PARS indicates that another individual — not M.K. — was the "target" of the police investigation. ***See*** Exhibit C-1, PARS.

the light most favorable to the verdict winner — here, the Commonwealth. Accordingly, on this record, we conclude the evidence is sufficient to sustain the adjudication of delinquency for PWID. ***See Interest of Evans***, 717 A.2d 542, 546 (Pa. Super. 1998), *appeal denied*, 736 A.2d 604 (Pa. 1999) (evidence that juvenile was found with nine individually wrapped rocks of crack cocaine, totaling 1.03 grams, in an area notorious for drug activity, and without drug paraphernalia for drug use was sufficient to sustain adjudication of delinquency for PWID). Therefore, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/1/2014