J-A07003-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| JONATHAN ANDREW GUZMAN, | |
| Appellee | No. 677 WDA 2015 |

Appeal from the Order March 17, 2015
In the Court of Common Pleas of Somerset County
Criminal Division at No(s): CP-56-CR-0000503-2014

BEFORE:  BOWES, MUNDY AND JENKINS, JJ.

MEMORANDUM BY BOWES, J.:                              **FILED JULY 20, 2016**

The Commonwealth appeals the March 17, 2015 order granting suppression.[1]  We affirm.

The trial court aptly set forth its factual findings, which are supported by the record, in its opinion.

> On or about May 7, 2014, [Appellee] was traveling westbound on the Pennsylvania Turnpike in a white Chevrolet Impala.  At that same time, Pennsylvania State Police Trooper John P. Isoldi (hereinafter, the "Trooper" or "Trooper Isoldi") was in his marked patrol vehicle, situated in a parked position, watching westbound traffic enter the Allegheny Tunnel.  The Trooper observed [Appellee] enter the Allegheny Tunnel without activating the vehicle's headlights, a violation of 75 Pa.C.S.A. § 4302.  Based on this observation, the Trooper abandoned his parked position,

---

[1]  The Commonwealth has certified that the order in question will terminate its prosecution.  Hence, we have jurisdiction.  Pa.R.A.P. 311(d).

followed [Appellee]'s vehicle, and effectuated a traffic stop at or near the exit of the tunnel.

Trooper Isoldi observed that [Appellee]'s vehicle was bearing registration from the Commonwealth of Virginia, and was able to determine that the vehicle was a rental vehicle. The Trooper then approached the vehicle and requested from [Appellee] a driver's license and vehicle registration. [Appellee] provided a valid driver's license and a rental agreement from Enterprise Rent-A-Car, which indicated that the vehicle was restricted to travel within Virginia, Washington, D.C., and Maryland. During the course of the traffic stop, [Appellee] advised the Trooper that he had picked up the vehicle that very morning and was traveling from Virginia to Cleveland, Ohio in order to visit a sick relative. During this time, the Trooper believed [Appellee] appeared nervous - he was staring straight ahead, refusing to make eye contact, and his right hand was shaking when he handed the Trooper his driver's license. Trooper Isoldi proceeded to run [Appellee]'s information through the National Crime Information Center, which revealed that [Appellee]'s license was valid and that [Appellee] had been convicted of a firearms offense in 2002. Trooper Isoldi then requested that [Appellee] exit the vehicle so he could explain to [Appellee] the traffic warning. [Appellee] was issued a warning for violation of the Vehicle Code, his paperwork was returned, and he was advised that he was free to leave.

Within one second of telling [Appellee] that he was free to leave the scene, the Trooper re-engaged [Appellee] for further questioning. The Trooper asked for consent to search the vehicle, which was denied. [Appellee] was then forced to place his hands on the vehicle while Trooper Isoldi performed a weapons search. This weapons search occurred within seconds of [Appellee] being advised that he was free to leave the scene. As a result of being denied consent to search the vehicle, Trooper Isoldi called for a canine unit to come to the scene for assistance. Shortly thereafter, Trooper Bret Kahler (hereinafter, "Trooper Kahler") and his canine, Kubko, arrived at the scene. Trooper Kahler and Kubko performed an exterior sniff search of the vehicle, and Kubko alerted to the presence of controlled substances near the driver's side door.

Trial Court Opinion, 03/18/15, at 2-3. As a result of the canine alert,

Trooper Isoldi applied for a search warrant, which was granted. The

- 2 -

subsequent search yielded, *inter alia*, a pistol with obliterated serial numbers and a digital scale with powder residue. ***Id***. at 3.

On November 18, 2014, a hearing was held on a motion to suppress. Following post-hearing memoranda by the parties, the trial court granted suppression on March 17, 2015. The order was accompanied by an opinion, wherein the trial court concluded Trooper Isoldi lacked reasonable suspicion to detain Appellee.

The Commonwealth filed a timely notice of appeal and complied with the trial court's order to prepare a Pa.R.A.P. 1925(b) statement. The Commonwealth raises two issues for our consideration:

> 1. Whether the lower court erred in finding that the officer in this matter did not possess the requisite reasonable suspicion to justify an investigative detention of [Appellee]?
>
> 2. Whether the lower erred in not finding that the officer in this matter possessed the requisite reasonable suspicion to validate a canine sniff of [Appellee]'s vehicle?

Appellant's brief at 4.

Our standard of review when considering an order denying a suppression motion is well-settled. We consider

> only the Commonwealth's evidence and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, the appellate court is bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. However, it is also well settled that the appellate court is not bound by the suppression court's conclusions of law.

*Commonwealth v. Tam Thanh Nguyen*, 116 A.3d 657, 663-64 (Pa.Super. 2015) (citations omitted).

The parties concede Appellant was subjected to a lawful traffic stop. The Commonwealth contends that the totality of the circumstances throughout the entire encounter, including Appellee's responses and behavior upon being told he could depart, create reasonable suspicion to continue the interrogation. Appellee, on the other hand, argues that the trooper lacked reasonable suspicion to continue the detention. Appellee's brief at 7.

We agree with Appellee. Once a traffic stop is complete, reasonable suspicion of criminal activity must exist to justify any continued detention:

> [W]here the purpose of an initial traffic stop has ended and a reasonable person would not have believed that he was free to leave, the law characterizes a subsequent round of questioning by the police as an investigative detention or arrest. In the absence of either reasonable suspicion to support the investigative detention or probable cause to support the arrest, the citizen is considered unlawfully detained.

*Commonwealth v. By*, 812 A.2d 1250, 1256 (Pa.Super. 2002) (citation omitted). Thus, once Trooper Isoldi issued the warning and informed Appellee he was free to leave, the continued detention[2] required reasonable

_____

[2] We note that the issue of whether this detention is viewed as comprising two distinct seizures or merely one continuous seizure is irrelevant to our analysis as Appellee was clearly not free to leave. We
*(Footnote Continued Next Page)*

suspicion of a crime unrelated to the traffic stop. *See Commonwealth v. Freeman*, 757 A.2d 903, 907 (Pa. 2000) ("Since the trooper had accomplished the purpose of the stop, as he expressly indicated, [defendant] would have been entirely within her rights to drive away at that point.")

To establish reasonable suspicion, the officer must "articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him to reasonably conclude, in light of his experience, that criminal activity was afoot[.]" *Commonwealth v. Caban*, 60 A.3d 120, 128 (Pa.Super. 2012) (citations omitted). The Commonwealth points to the following observations of the officer in support of reasonable suspicion:

> (1) [Appellee] was driving a rental vehicle outside of the contractually allowed area for the vehicle; (2) [Appellee] had a prior firearm violation; (3) [Appellee] was exhibiting nervous behaviors; (4) [Appellee] was travelling to Cleveland, a known hub for drug trafficking; and (5) [Appellee]'s explanation for the trip seemed fabricated[.]

Appellant's brief at 10. We discuss these factors *seriatim.*

The government cites *Commonwealth v. Kemp*, 961 A.2d 1247 (Pa.Super. 2008) (*en banc*), for the proposition that operating a third-party vehicle is commonly associated with drug trafficking. In *Kemp*, a State Trooper stopped a vehicle for improperly-tinted windows. The car did not

*(Footnote Continued)* —————————

therefore address the reasonable suspicion in light of everything known to the officer at the time he prevented Appellee from departing in his vehicle.

belong to either occupant, and the trooper testified drug traffickers often use third-party vehicles to prevent asset forfeiture. *Id*. at 1251. We enumerated this factor as one of many in finding reasonable suspicion. More significantly for present purposes, we also stated that the trooper detected a fresh odor of marijuana when the driver lowered the window, and of a masking agent consisting of approximately a dozen air fresheners and dryer sheets. *Id*. at 1255. We described these items as constituting "major indicia of drug-related activity." *Id*. at 1254.

*Kemp* thus treats the use of a third-party vehicle as a relevant factor but requires other indicia of drug use. Here, there was no odor, masking agent, or any other indication of drug-related activity. "With respect to [the officer]'s initial reasonable suspicion, I note that the crowning fact is the presence of the open boxes of detergent and fabric sheets. These items are not usually found in an open state in automobiles[.]" *Commonwealth v. Rogers*, 849 A.2d 1185, 1193 (Pa. 2004) (Castille, J., concurring). Furthermore, the use of the third-party vehicle herein is not accompanied by any other factor, such as an "inability to provide the correct name of the car's owner." *Kemp*, *supra*, at 1255; *Commonwealth v. Caban*, 60 A.3d 120, 129 (Pa.Super. 2012) (trooper's computer search contradicted defendant's answers regarding owner of vehicle).

We next address Appellee's criminal conviction for aggravated assault with a firearm from 2002. At the time of the stop, the conviction was over a

dozen years old. Furthermore, the conviction was not drug-related in any way. As such, it has questionable value in arousing suspicion of drug possession. **See Commonwealth v. Grahame**, 7 A.3d 810 (Pa. 2010) (rejecting a "guns follow drugs" presumption that would justify a protective weapons search when drugs are seized).

The third factor is nervous behavior. We do not attach any particular significance to Appellee's initial nervousness when stopped, given the absence of other indicia of drug-related activity. "A police officer's observation of a citizen's nervous demeanor and furtive movements, without more, establishes nothing more than a 'hunch,' employing speculation about the citizen's motive in the place of fact." **Commonwealth v. Reppert**, 814 A.2d 1196, 1206 (Pa.Super. 2002) (*en banc*).

We address the final two factors together. Trooper Isoldi conceded the discussion of Cleveland and Appellee's explanation for his trip was extremely brief. N.T., 11/18/14, at 67. There were no inconsistencies in his explanation for visiting Cleveland. The officer merely believed Appellee was lying. We will not find reasonable suspicion based on "law enforcement officers' wholly subjective interpretation[s] of inoffensive conduct[.]" **Reppert**, **supra**. Accordingly, these two factors are of little importance.

For the foregoing reasons, we agree with the suppression court that there was no reasonable suspicion to detain Appellee after the traffic infraction was processed. We also note that, after the traffic stop in this

case, the United States Supreme Court issued **Rodriguez v. United States**, 135 S.Ct. 1609 (2015), wherein the Court held that "a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures." **Id**. at 1612. An officer cannot "prolong the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual." **Id**. at 1615. Once Trooper Isoldi returned the documents and issued the warning, he lacked reasonable suspicion to justify the seizure. Therefore, Appellee's asserted nervousness **after** the stop's purpose was completed is irrelevant. **Commonwealth v. Dales**, 820 A.2d 807, 814-15 (Pa.Super. 2003) (where purpose of traffic stop had been completed, inconsistencies and behaviors learned during "second round of questioning" cannot be considered in reasonable suspicion analysis).

For the foregoing reasons, we agree with the suppression court that there was no reasonable suspicion to detain Appellee after the traffic infraction was processed.

Order affirmed.

Judge Jenkins joins the memorandum.

Judge Mundy concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>7/20/2016</u>