J-S67043-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellee :
:
v. :
:
BRIAN S. GLADWIN :
:
Appellant : No. 1366 EDA 2017

Appeal from the Judgment of Sentence April 11, 2017
in the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0004924-2016

BEFORE: OTT, J., NICHOLS, J. and STRASSBURGER, J.*

MEMORANDUM BY STRASSBURGER, J.: **FILED JANUARY 14, 2019**

Brian S. Gladwin (Appellant) appeals from the judgment of sentence imposed following his conviction for possession of a controlled substance and possession of drug paraphernalia. Appellant challenges the trial court's order denying his motion to suppress. Upon review, we affirm.

On May 18, 2016, shortly before noon, three Delaware County Adult Probation and Parole Officers, including Lisa Coladonato and Frank Shannon, arrived at the apartment shared by Appellant and his girlfriend, Lori Fetrow, to perform a routine, unannounced home check and random urine test of Fetrow, a probationer. N.T., 12/21/2016, at 7-8. Officer Coladonato was Fetrow's assigned probation officer, and the other officers were there to assist and ensure safety. *Id.* at 8, 11. After officers knocked on the outer door,

_____

* Retired Senior Judge assigned to the Superior Court.

Fetrow answered and let them in. *Id.* at 9-10. While Officer Coladonato spoke with Fetrow on the inside entry landing, Officer Shannon continued up five or six steps to the apartment's living area. *Id.* at 10, 27, 30. As he reached the top, Officer Shannon observed Appellant "with his hands in the pockets of his sweatshirt acting nervously and walking toward the bathroom." Order (Findings of Fact), 2/28/2017, at 1 (unnumbered); *see also* N.T., 12/21/2017, at 10, 13-14, 17. The pullover sweatshirt had pouch-style pockets in the front. N.T., 12/21/2017, at 14. Officer Shannon "was concerned for [his] safety because [Appellant's] hands were variously concealed inside his sweatshirt." Order (Findings of Fact), 2/28/2017, at 1 (unnumbered); *see also* N.T., 12/21/2017, at 10, 13-14, 17, 22. Fearing a weapon may be concealed inside the sweatshirt, Officer Shannon told Appellant to stop and remove his hands from the pockets for his and the other officers' safety. Order (Findings of Fact), 2/28/2017, at 1 (unnumbered); *see also* N.T., 12/21/2016, at 17-18. Officer Shannon testified that he "didn't know what was in [Appellant's] pocket[s] or if [Appellant] was going to retrieve something from the bathroom." N.T., 12/21/2017, at 17. Because Appellant was acting nervously and concealing his hands in his sweatshirt, Officer Shannon believed Appellant "was possibly going to try and kill [him], have a knife, a gun." *Id.* Officer Shannon has 18 years of experience as a probation officer and has done hundreds, perhaps thousands, of home checks. *Id.* at 6, 12. As he further explained,

- 2 -

> I have no idea what he might have on him. You know, we go into these people's houses and they don't always want us there. So, you know, with his hands, like I said, in his pocket area, you know, I didn't know what could be in there, you know, so that's why I tell [*sic*] him to stop or, like I said, going into a whole separate room where I can't see him if there's something in there as well. I told him to stop, remove his hands.

*Id.* Appellant complied with Officer Shannon's directive to stop and remove his hands from the pockets. *Id.* at 18. He then told Appellant that, for safety purposes, Officer Shannon was searching Appellant and he should remove the contents of his pockets. *Id.* Appellant removed, *inter alia*, an unlabeled pill bottle containing a rock-like substance, which Officer Shannon recognized to be an illegal drug of "either crack or meth." *Id.* Officer Shannon then contacted the Ridley Park Police, who took Appellant into custody. *Id.* at 24.

Based on the foregoing, Appellant was charged with the aforementioned crimes.[1] Prior to trial, Appellant filed an omnibus pretrial motion to suppress evidence, contending that the frisk of Appellant's person was unlawful. Officer Shannon and Fetrow testified at the December 21, 2016 suppression hearing. At the conclusion of the hearing, the court took the issue under advisement and directed the parties to submit briefs.

On February 28, 2017, the court denied the motion to suppress. A non-jury trial was held on April 11, 2017, wherein Appellant was found guilty of the aforementioned charges. Appellant was immediately sentenced to one year of probation on each conviction, to be served concurrently. Appellant did

---

[1] Appellant was charged initially with manufacture of a controlled substance and possession of drug paraphernalia, but the manufacture charge was changed to possession of a controlled substance. *See* Information, 9/7/2017.

- 3 -

not file any post-sentence motions. This appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant presents the following issue for our consideration.

1. Did the trial court err in failing to suppress the physical evidence in these matters, specifically the amber colored prescription bottle as well as the narcotics found therein?

    a. Did the trial court err in finding that the probation officer had the lawful authority to stop a non-parolee, in his home and conduct a stop and seizure of [Appellant]?

    b. Did the trial court err in finding that the probation officer had lawful authority to stop a non-parolee, in his home and conduct a search of said non-parolee with the predicate that [Appellant] was thought to have a weapon wherein statements were made outside the premises of an intent to search [Appellant] for any reason?

Appellant's Brief at 5.[2]

The first issue of the probation officers' authority "presents a purely legal question, over which our standard of review is *de novo* and our scope of review plenary." ***Commonwealth v. Mathis***, 173 A.3d 699, 706 (Pa. 2017). Appellant argues that probation officers do not have statutory authority to conduct warrantless searches of non-probationers while performing a routine home check of a probationer. ***See*** Appellant's Brief at 20-24.

_____

[2] Appellant has withdrawn the additional issue he raised in his Rule 1925(b) statement. ***See*** Appellant's Brief at 5.

We find our Supreme Court's decision in **Mathis** instructive here. The Court in **Mathis** held that state "parole agents have the authority to conduct a protective **Terry**[3] frisk of non-parolees within the course of executing their statutorily imposed duties, so long as reasonable suspicion supports the agents' conduct." 173 A.3d at 711. In so holding, our Supreme Court examined the statutory authority delineated to state parole agents, 61 Pa.C.S. §§ 6151-53, which the Court described as follows.

> [S]tate parole agents' authority and duties with respect to parolees are prescribed by two sections of the Prisons and Parole Code[, 61 Pa.C.S. §§ 6151-53]. Section 6152 declares agents to be peace officers and provides them with police power to arrest without warrant any parolee under supervision for violating parole conditions. **See** 61 Pa.C.S. § 6152. Section 6153 deems parole agents to be in a "supervisory relationship with their offenders," aimed at assisting parolees in rehabilitation and reassimilation and protecting the public. **Id.** § 6153(a). This section further outlines the procedures and requirements for agents to search the person and property of offenders, **see id.** § 6153(b)(1), (d), and provides that such searches must comport with the protections of the United States and Pennsylvania Constitutions, **see id.** § 6153(b)(2). Another provision prevents the exclusion of evidence from parole or criminal proceedings based solely on a violation of the statute. **See id.** § 6153(c).

**Mathis**, 173 A.3d at 701-02. The Majority in **Mathis** acknowledged that "the plain language of [s]ections 6152 and 6153 of the Parole Code generally delineates the supervisory relationship that parole agents have with offenders, but does not otherwise reveal a legislative intent to empower parole agents to act as police officers with respect to non-offenders or private citizens." **Id.**

---

[3] **See Terry v. Ohio**, 392 U.S. 1 (1968).

at 708 (citation and internal quotation marks omitted). Nonetheless, it found

"although ancillary aspects of a parole agents' duty are not expressly

referenced in the legislation, they nonetheless derive directly from their

statutorily imposed functions." *Id.* at 709. In agreeing with the safety-based

rationale advanced by this Court,[4] the Supreme Court observed that

> in order to satisfy these statutory duties, parole agents, among other things, conduct routine, unannounced home visits, as in this case, thus risking exposure to a variety of potentially dangerous unknowns. In this respect, [the Supreme Court] find[s] persuasive, as did the Superior Court, the perspective developed by other jurisdictions.
>
> > Once we recognize the authority of parole officers to search parolees and their premises, ... we cannot ignore the hazards involved in this kind of public duty. A bullet's message is deadly no matter who the sender is. A law-enforcement officer in a potentially perilous situation must have a basic right of self-protection notwithstanding the shape of his badge. As long as an officer is properly pursuing his lawful duty, the only issue "is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety ... was in danger."
>
> **People v. Thompson**, [] 353 N.Y.S.2d 698, 702 (N.Y. Sup. Ct. 1974) [] (citation omitted) (quoting **Terry**, 392 U.S. at 27 []).

**Mathis**, 173 A.3d at 708-09 (footnote and some citations omitted). Moreover,

our Supreme Court examined the inherent interactions with non-offenders in

parole enforcement activities, and the parole agents' designation as peace

officers, to conclude that "a parole agent's authority to conduct a weapons

---

[4] **See Commonwealth v. Mathis**, 125 A.3d 780, 785 (Pa. Super. 2015), *aff'd* 173 A.3d 699 (Pa. 2017).

frisk of non-parolees … attends the agents' statutory duty to effectively supervise parolees and is grounded in the powers concomitant to their peace officer designation." *Id.* at 710.

Turning to the statutory authority of county probation officers, we note that the language of the statutory sections at issue for state parole agents in *Mathis* is materially identical to the language of the statutory sections relating to county probation officers. *Compare* 61 Pa.C.S. §§ 6151-53 (state parole agents) *with* 42 Pa.C.S. §§ 9911-13 (county probation officers). As with parole agents, county probation officers "are in a supervisory relationship with their offenders" and the "purpose of this supervision is to assist the offenders in their rehabilitation and reassimilation into the community and to protect the public." 42 Pa.C.S. § 9912. Similarly, county probation officers are also declared to be peace officers and they have police power to arrest without warrant any probationer under supervision for violating probation conditions. 42 Pa.C.S. § 9913. Accordingly, we find *Mathis* persuasive, and for the reasons outlined therein, conclude that county probation officers likewise "have the authority to conduct a protective *Terry* frisk of [non-probationers] within the course of executing their statutorily imposed duties, so long as reasonable suspicion supports the [officers'] conduct." *See Mathis*, 173 A.3d at 711.

We now turn to Appellant's contention that, even assuming Officer Shannon had authority to frisk a non-probationer, he lacked reasonable

suspicion to justify the frisk under the circumstances here. *See* Appellant's Brief at 14-15, 32-33. We consider this issue mindful of the following.

> [W]hen a defendant challenges an adverse ruling of a suppression court, as is the case here, a reviewing court is bound by the suppression court's factual findings that are supported by the record, considering only the evidence of the prosecution and so much of the defense's evidence that remains uncontradicted.

*Mathis*, 173 A.3d at 702 n.2. "As to whether reasonable suspicion existed, we defer to the suppression court's findings of fact as supported by the suppression hearing record, which we assess in the light most favorable to the Commonwealth as the prevailing party. However, we review any legal conclusions *de novo.*" *Id.* at 706 (citations omitted). "In order to establish reasonable suspicion, the [] officer must articulate specific facts from which he could reasonably infer that the individual was armed and dangerous." *Commonwealth v. Wilson*, 927 A.2d 279, 284 (Pa. Super. 2007).

We agree with the trial court that, when viewed in the light most favorable to the Commonwealth, the facts establish reasonable suspicion that Appellant posed a danger to officers. Appellant claims Fetrow's testimony that she overheard a statement made by one of the officers to "check" Appellant before they even saw Appellant's hands in his pockets shows the officers' "actions were in fact a false ruse to conceal their true intentions" and that the officers "did not possess a legitimate fear for officer safety." *See* Appellant's Brief at 14, 21, 23. However, Fetrow's testimony was contradicted by Officer Shannon's account, and the court specifically credited Officer Shannon's

- 8 -

testimony that he had concerns for his and the other officers' safety when he observed Appellant's nervous demeanor, hands concealed in his sweatshirt pockets, and movement toward the bathroom. Order (Findings of Fact), 2/28/2017, at 1-2 (unnumbered); Rule 1925(a) Opinion, 8/1/2018, at 9-10. When evaluated collectively, Officer Shannon articulated specific facts from which "a reasonably prudent officer in these circumstances would be warranted in the belief that his safety or that of others was in danger, warranting a *Terry* search for his protection." *Mathis*, 125 A.3d at 791. Appellant's behavior gave rise to Officer Shannon's reasonable suspicion that Appellant may be armed and Officer Shannon reasonably feared for his safety.[5]

Accordingly, we conclude that the suppression court did not err when it denied Appellant's omnibus pretrial motion to suppress.

Judgment of sentence affirmed.

_____

[5] To the extent Appellant argues his mere presence at the apartment is an insufficient basis for a protective frisk, *see* Appellant's Brief at 30-33 (citing *Ybarra v. Illinois*, 444 U.S. 85 (1979) and *Commonwealth v. Grahame*, 7 A.3d 810 (Pa. 2010), we note that Appellant was not asked to empty his pockets merely because he was present, but rather, because of his behavior. *See Mathis*, 125 A.3d at 790 n.11.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/14/19