J-S25042-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| WILLIAM WILLIAMS-DONINI | : | |
| | : | |
| Appellant | : | No. 165 EDA 2024 |

Appeal from the Judgment of Sentence Entered December 14, 2023
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0002629-2021

BEFORE: PANELLA, P.J.E., DUBOW, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.: **FILED OCTOBER 14, 2025**

Appellant, William Williams-Donini, appeals from the aggregate judgment of sentence of 34 to 68 months' incarceration, imposed after a jury convicted him of carrying a firearm without a license, possession of a controlled substance, and possession of a controlled substance with intent to deliver (PWID).[1] Herein, Appellant argues that the trial court erred by denying his pretrial motions to suppress evidence and dismiss his case under Pa.R.Crim.P. 600, as well as the sufficiency of the evidence to sustain his conviction for carrying a firearm without a license and the legality of his sentence for possession of a controlled substance. After careful review, we vacate Appellant's judgment of sentence for possession of a controlled substance, but affirm his judgment of sentence in all other respects.

_____

[1] 18 Pa.C.S. § 6106, 35 P.S. § 780-113(a)(16), and 35 P.S. § 780-113(a)(30), respectively.

The trial court summarized the facts underlying Appellant's case, as follows:

On March 14, 2021, at approximately 5:30 a.m., in the vicinity of the Holiday Inn Express in Essington, Delaware County, [Pennsylvania], Officer [William] Righter of the Tinicum Township Police Department was on routine patrol and observed a running vehicle in the parking lot with two individuals who were not awake. Officer Righter was in full uniform and in an unmarked police car. Officer Righter exited his vehicle and approached the driver's side and illuminated the interior of the vehicle with his flashlight. At this time, both [the] driver ([Appellant]) and [the] passenger occupant failed to respond to this illumination. Due to the flashlight illumination, which Officer Righter performed for officer safety, in plain sight, Officer Righter observed packages of green and yellow pills on the floor of the vehicle. At this time, for officer safety, Officer Righter called for backup. Officer Lowder[2] of the Tinicum [Township] Police Department arrived to assist in full uniform in a marked patrol vehicle. Officer Righter remained at the driver's side, while Officer Lowder approached the passenger side. For officer safety, Officer Righter placed handcuffs on [Appellant], while he was still in the vehicle. Both officers requested the vehicle occupants to exit the vehicle, at which point, a bag of green leafy vegetable matter, later confirmed to be marijuana, fell from [Appellant's] lap, and additional pills, pill bottles[,] and marijuana were retrieved during the [o]fficer's search[] incident to arrest. [Appellant] was placed in the back of the police vehicle while Officer Righter collected the evidence in plain view, photographed the scene, [and] requested the vehicle be towed, in accordance with police procedures. Officer Righter prepared an application for a search warrant, which was granted. Officer Righter and Officer [Josh] Powley of the Ridley Park Police Department then performed the search of the vehicle, in accordance with the warrant, at the Tinicum [Township] Police Headquarters. During this execution of the search warrant, the officers discovered multiple packages of marijuana, pills inside a Newport cigarette box, as well as a loaded highpoint 9mm semiautomatic pistol in the engine block.

_____

[2] We note that the record spells this officer's surname as "Loder," and there is no first name provided. *See* N.T. Suppression Hearing, 3/24/22, at 16.

Trial Court Opinion (TCO), 12/10/24, at 3.

Appellant was arrested and charged with the gun and drug offenses noted above. Prior to trial, he filed a motion to suppress the drugs and gun found in the vehicle. A hearing was held on March 24, 2022, at which Officer Righter testified. The court issued an order on October 21, 2022, denying Appellant's motion to suppress. On September 8, 2023, Appellant filed a motion to dismiss his case under Pa.R.Crim.P. 600. He filed a supplemental motion to dismiss under Rule 600 on September 26, 2023. After a hearing on Appellant's motions on October 10, 2023, the court denied them.

Appellant's case proceeded to a jury trial that same day. On October 11, 2023, the jury convicted Appellant of the above-stated offenses. On December 14, 2023, the court sentenced him to the aggregate term set forth *supra*. Appellant did not file a post-sentence motion, but he filed a timely notice of appeal on January 8, 2024. Appellant and the court thereafter complied with Pa.R.A.P. 1925. Herein, Appellant states four issues for our review:

> I) Whether the court below erred in denying [Appellant's] suppression motion since police seized him without legal justification and then searched the vehicle at the scene without a warrant, probable cause, or exigency in violation of his state and federal constitutional rights?
>
> II) Whether the lower court erred in refusing to dismiss the case against [Appellant] after more than 365 days elapsed from the complaint's filing, where the prosecution did not present sufficient competent evidence of excludable time or excusable delay and failed to prove that it acted with due diligence, in violation of Pa.R.Crim.P. 600, as well as [Appellant's] state and federal constitutional speedy trial rights?

III) Whether the evidence is insufficient to sustain the conviction for carrying a firearm without a license (count two) because the prosecution at trial failed to prove beyond a reasonable doubt that [Appellant] actually or constructively possessed a firearm?

IV) Whether the [18]-month sentence for possession of a controlled substance (count five) is illegal, as it exceeds the one-year statutory maximum[?]

Appellant's Brief at 7 (emphasis omitted).

Appellant first argues that the trial court erred by denying his pretrial motion to suppress evidence.

An appellate court's standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by those findings and may reverse only if the court's legal conclusions are erroneous. Where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to plenary review.

*Commonwealth v. Smith*, 164 A.3d 1255, 1257 (Pa. Super. 2017) (cleaned up).

Pertinent to the arguments raised by Appellant herein, we note that,

[t]he Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect individuals against unreasonable searches and seizures. *Commonwealth v. Miller*, 56 A.3d 424, 429 (Pa. Super. 2012). Warrantless searches or seizures are presumptively unreasonable subject to certain established exceptions. *Id.* (citation omitted).

One exception, the plain view doctrine, permits the warrantless seizure of an object when: (1) an officer views the object from a lawful vantage point; (2) it is immediately apparent to him that the object is incriminating; and (3) the officer has a lawful right of access to the object. *Id.* (citation omitted).

*Commonwealth v. Hudson*, 92 A.3d 1235, 1241 (Pa. Super. 2014), *abrogation on other grounds recognized by Commonwealth v. Byrd*, 185 A.3d 1015 (Pa. Super. 2018). Moreover, our Supreme Court has explained that,

[t]he immediately apparent requirement is coextensive with probable cause. Probable cause exists where the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed. Probable cause is a practical, non-technical concept that is evaluated under a traditional totality-of-the-circumstances test.

*Commonwealth v. Saunders*, 326 A.3d 888, 897 (Pa. 2024).

Instantly, Appellant first argues that Officer Righter unlawfully seized him when the officer "woke [him], forcibly removed him from the car, and handcuffed him based only on the observation of unidentifiable pills on the floorboard." Appellant's Brief at 26 (citing N.T. Suppression Hearing at 16 (Officer Righter's testifying that, "as soon as [he] went up to the vehicle and illuminated it, [he] observed narcotics in plain view"); *id.* at 36-38 (Officer Righter's testifying that he did not know what the pills were until he got the results back from the forensic laboratory)). Appellant claims that the "incriminating nature" of the pills "was not obvious[,]" similarly to the alleged contraband at issue in the cases of *Hudson* and *Commonwealth v. Kelly*, 409 A.2d 21 (Pa. 1979).

We disagree. In **Hudson**, we concluded that two pill bottles with labels partially removed, found next to a pill bottle with an intact label bearing Hudson's name, were not 'immediately apparent' as contraband. **Hudson**, 92 A.3d at 1242-43. We noted that "the contents of those bottles were not immediately apparent, and a pill bottle by itself is not contraband." **Id.** at 1242. In **Kelly**, our Supreme Court held that "a small amber prescription vial" that "appeared to contain aluminum foil packets" was not "immediately apparent" as criminal contraband. **Kelly**, 409 A.2d at 22-23. The Court "reject[ed] as preposterous the notion that anyone possesses expertise to render an opinion on the contents of the vial as seen in [Kelly's] car." **Id.**

The facts of Appellant's case are distinguishable from both **Hudson** and **Kelly**. Here, Officer Righter testified that when he shined his light into Appellant's vehicle, he "observe[d] in plain view right on the floor bags of -- well, packages of pills that were packaged up for -- appeared to be for street sales." N.T. Suppression Hearing at 12. Unlike in **Hudson** and **Kelly**, Officer Righter could clearly see pills, and those pills were not contained in prescription bottles or vials, but in packaging consistent with narcotics being illegally sold. These facts were sufficient to make it "immediately apparent" to Officer Righter that the pills were contraband. Thus, Officer Righter had probable cause to believe that Appellant was committing the crime of possessing narcotics, and we reject his argument that the officer "lacked legal justification to seize [Appellant], and all evidence obtained as a result — whether at the scene or pursuant to the subsequently issued search warrant,

including any controlled substances and firearm — constitutes fruit of the poisonous tree." Appellant's Brief at 27.

We also reject Appellant's rather confusing argument that the police "violated his rights by entering the properly parked rental car without a search warrant and 'collected any evidence in plain view.'" *Id.* at 28 (citation to the record omitted). Appellant correctly observes that in *Commonwealth v. Alexander*, 243 A.3d 177, 207 (Pa. 2020), our Supreme Court held that the automobile exception for warrantless vehicle searches requires *both* probable cause and exigent circumstances under the Pennsylvania Constitution. However, he ignores that more recently, in *Saunders*, the Court clarified that "there are different standards for access to a car under the plain view exception and Pennsylvania's automobile exception." *Saunders*, 326 A.3d at 903. The *Saunders* Court explained: "Put simply, under [*Commonwealth v.*] *McCree*, [924 A.2d 621 (Pa. 2007) (plurality),] lawful access to seize an item from a car under the third prong of the plain view doctrine requires the unexpected development of probable cause, whereas, pursuant to *Alexander*, the automobile exception requires probable cause and exigent circumstances." *Id.* Here, Appellant makes no attempt to argue that he was the subject of a police investigation prior to the stop in question, such that Officer Righter's finding the pills could not be considered an 'unexpected development of probable cause.' Accordingly, the plain view exception applies, and Officer Righter was permitted to seize the pills inside the car, and the marijuana that fell from Appellant's lap as he was removed from the

vehicle, regardless of whether there was any exigency. *See Commonwealth v. Palaio*, 334 A.3d 407, *3 (Pa. Super. filed Jan. 29, 2025) (unpublished memorandum) (finding no error in the trial court's denial of suppression under the rationale of *McCree* and *Saunders* where officers observed contraband (a glass bong) in plain view in Palaio's vehicle during a traffic stop and lawfully seized that item after arresting Palaio).[3]

Finally, we observe that, contrary to Appellant's suggestion, there was no warrantless "search" of his vehicle in this case, aside from the seizure of the pills and marijuana from inside the car where they were in plain view. Officer Righter testified that after he observed the pills in plain view, he was removing Appellant from the vehicle when he observed a baggie of "green leafy vegetable matter" that "fell from [Appellant's] lap…." N.T. Suppression at 13. Officer Righter then performed a pat-down of Appellant, finding "additional pills … and … green leafy vegetable matter." *Id.* at 19. Appellant was then placed under arrest, and the vehicle was secured and towed to the police station so that a search warrant could be obtained. *Id.* at 19-20. Officer Righter applied for and obtained a search warrant and the vehicle was searched, revealing "multiple packages of marijuana[,]" more pills, and a "nine millimeter semiautomatic pistol that was loaded with obliterated serial

---

[3] Pursuant to Pa.R.A.P. 126(b), non-precedential decisions of the Superior Court filed after May 1, 2019, may be cited for their persuasive value.

numbers[.]" *Id.* at 21-22. The gun was located "inside the engine block …
next to the battery terminal and … the air intake filter." *Id.* at 22.

We discern no illegality in these facts. After Appellant's arrest, Officer
Righter obtained a warrant to search Appellant's vehicle. The affidavit of
probable cause stated only the facts discussed herein — *i.e.*, that Officer
Righter observed baggies of pills suspected to be narcotics inside the vehicle,
and he found marijuana and more pills on Appellant's person — and one
additional fact that marijuana was also seen in plain view under Appellant's
passenger when he was removed from the vehicle. Appellant does not
challenge that these facts established probable cause. Therefore, no relief is
due on Appellant's first issue, as the court did not err in denying his motion to
suppress.

Next, Appellant contends that the trial court erred by failing to grant his
motion to dismiss his case under Rule 600.

> In evaluating Rule [600] issues, our standard of review of a trial
> court's decision is whether the trial court abused its discretion.
> Judicial discretion requires action in conformity with law, upon
> facts and circumstances judicially before the court, after hearing
> and due consideration. An abuse of discretion is not merely an
> error of judgment, but if in reaching a conclusion the law is
> overridden or misapplied or the judgment exercised is manifestly
> unreasonable, or the result of partiality, prejudice, bias, or ill will,
> as shown by the evidence or the record, discretion is abused.
>
> The proper scope of review … is limited to the evidence on the
> record of the Rule [600] evidentiary hearing, and the findings of
> the [trial] court. An appellate court must view the facts in the
> light most favorable to the prevailing party.

*Commonwealth v. Ramos*, 936 A.2d 1097, 1100 (Pa. Super. 2007) (*en banc*) (citation omitted).

Rule 600 states, in pertinent part:

**(A) Commencement of Trial; Time for Trial**

(1) For the purpose of this rule, trial shall be deemed to commence on the date the trial judge calls the case to trial, or the defendant tenders a plea of guilty or *nolo contendere*.

(2) Trial shall commence within the following time periods.

(a) Trial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed.

\*\*\*

**(C) Computation of Time**

(1) For purposes of paragraph (A), periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence.  Any other periods of delay shall be excluded from the computation.

(2) For purposes of paragraph (B), only periods of delay caused by the defendant shall be excluded from the computation of the length of time of any pretrial incarceration.  Any other periods of delay shall be included in the computation.

(3)(a) When a judge or issuing authority grants or denies a continuance:

(i) the issuing authority shall record the identity of the party requesting the continuance and the reasons for granting or denying the continuance; and

(ii) the judge shall record the identity of the party requesting the continuance and the reasons for granting or denying the continuance.  The judge also shall record to which party the period of delay caused

by the continuance shall be attributed, and whether the time will be included in or excluded from the computation of the time within which trial must commence in accordance with this rule.

Pa.R.Crim.P. 600(a), (c).

In this case, Appellant claims that "the prosecution was required to bring [his] case to trial **no later than** Monday[,] June 12, 2023, unless it could prove additional excludable time or excusable delay." Appellant's Brief at 33 (citing Pa.R.Crim.P. 600(C); emphasis in original). Appellant contends that his "trial did not commence until October 10, 2023, and the prosecution failed to prove that it acted with due diligence at any juncture." *Id.* Appellant argues that "[t]he [trial] court counted only 155 days against the prosecution but attributed 316 days to judicial delay, totaling at least 471 days for which [Appellant] was not at fault. The prosecution was required to show that it had been diligent during that entire period, but it failed to do so." *Id.* at 34 (citations omitted).

Appellant relies on **Commonwealth v. Harth**, 252 A.3d 600 (Pa. 2021). There, our Supreme Court held

that, in ruling on a defendant's Rule 600 motion to dismiss, a trial court must first determine whether the Commonwealth has met its obligation to act with due diligence throughout the life of the case; if the Commonwealth meets its burden of proving due diligence, only then may the trial court rely upon its own congested calendar or other scheduling problems as justification for denying the defendant's motion. Otherwise, the due diligence component of Rule 600 "would have little, if any, meaningful import."

*Id.* at 618 (quoting *Commonwealth v. Mills*, 162 A.3d 323, 327 (Pa. 2017) (Wecht, J., concurring); footnote omitted)).

Here, Appellant contends that "[t]he prosecution presented no competent evidence whatsoever of excludable time, excusable delay, or any other proof that it complied with Rule 600." Appellant's Brief at 34. He further insists that "[t]he record at the prompt trial hearing and the [trial] court's opinion do not support a finding that the prosecution acted diligently throughout the case, let alone [during] the 471 days of delay (at least) not caused by [Appellant] or the pandemic." *Id.* at 35 (citations omitted). Accordingly, Appellant concludes that the court "erroneously denied the defense motion to dismiss with prejudice." *Id.*

We disagree. The criminal complaint in this case was filed on March 16, 2021, making the run date for Appellant's trial March 16, 2022. The court found that 169 days were excludable due to the Covid-19 pandemic, which Appellant does not challenge, thus making the adjusted run date September 1, 2022. *See* TCO at 4. Appellant also does not dispute the court's excluding 157 days due to the litigation of his motion to suppress, and another 128 days due to defense continuance requests, totaling 285 days of defense delay. Contrary to Appellant's claim that the adjusted run date would be June 12, 2023, we conclude the adjusted run date would be June 13, 2023. Because Appellant's trial began on October 10, 2023, it fell 119 days beyond the 365-day deadline of Rule 600, unless there was other excludable delay.

We conclude that there was. Specifically, the trial court noted that on December 12, 2022, "new defense counsel … was present and representing [Appellant]. Defense counsel noted additional discovery items which were believed to be missing. This was agreed as a 'joint continuance.'" TCO at 5 (citing N.T. Hearing, 12/22/22, at 3). "The [c]ourt issued a status listing for March 6, 2023." *Id.* We agree with the Commonwealth that "[t]his request does not count against the Commonwealth's 365 days." Commonwealth's Brief at 24 (citing **Commonwealth v. Dunmore**, 324 A.3d 1, 8 (Pa. Super. 2024) ("Continuances based on joint requests by the Commonwealth and the defendant are excludable time under … [R]ule [600].") (citation omitted)). Thus, there were 85 days of excludable delay between December 12, 2022, and March 6, 2023.

We also agree with the Commonwealth that there were 97 days of excludable delay from March 20, 2023 to June 26, 2023. At the status hearing on March 20, 2023, the court stated that "everybody seems like they're ready for trial[,]" but the Commonwealth expressed that it was trying another case, which was "a 2020 case where the [d]efendant [was] incarcerated." N.T. Hearing, 3/20/23, at 3-4, 8. The Commonwealth elaborates on appeal that this was a backlogged case that was "still untried due to the Covid shutdown[] that needed to be tried before reaching [Appellant's] case." Commonwealth's Brief at 24-25. Notably, the court stated at the March 20, 2023 hearing: "I'm going to list it for court continuance, ready for trial. Okay?[,]" to which defense counsel replied, "That's fine, Judge." N.T. Hearing, 3/20/23, at 8.

We conclude that this continuance of 97 days, to which the defense agreed, is excludable. *See Commonwealth v. Hunt*, 858 A.2d 1234, 1241 (Pa. Super. 2004) ("If the defense does indicate approval or acceptance of the continuance, the time associated with the continuance is excludable under Rule 600 as a defense request.").

Moreover, even had Appellant *not* agreed to this court continuance, we would reject his argument that the delay should have been credited to the Commonwealth because it failed to demonstrate due diligence. Again, the Commonwealth explained at the March 20, 2023 hearing that it could not try Appellant's case that day because it was trying the case of another, incarcerated defendant that had been backlogged due to the courtroom closures caused by the pandemic. In *Commonwealth v. Lear*, 325 A.3d 552 (Pa. 2024), our Supreme Court declined "to extend the narrow *Harth* exception" to delays caused "when a global pandemic precipitates a court-wide shutdown followed by a court-wide slowdown," as "delay is unavoidable irrespective of the Commonwealth's diligence." *Id.* at 563. The Court contrasted pandemic-related delays with "[d]elay stemming from the unavailability of a single judge[,]" which "could conceivably be averted if the Commonwealth is ready to proceed" by "potentially … reassign[ing the case] to a different judge." *Id.* The *Lear* Court held that "the delays caused by the COVID-19 pandemic-related emergency court closures and restrictive protocols do not fall under *Harth's* limited exception but, instead, constitute 'other periods of delay' for purposes of Rule 600." *Id.* (footnote omitted).

- 14 -

Because "the Commonwealth's diligence is never relevant to the Rule 600 analysis for 'other periods of delay,'" the *Lear* Court concluded that no assessment of the Commonwealth's diligence was necessary. *Id.* The same is true in the instant case. Because "the backlog that required the court to push [Appellant's] trial to a later date was directly attributable to the pandemic[,]" and "was court-wide and not attributable to only this particular judge[,]" we follow *Lear* in concluding that the 97-day delay from March 20, 2023 to June 26, 2023, is 'other periods of delay' under Rule 600.

In sum, the 85-day delay from the joint continuance (December 12, 2022 to March 6, 2023), and the 97-day delay from the court continuance caused by the pandemic backlog (March 20, 2023 to June 26, 2023), totals 182 days of excludable time. Adding that time to the adjusted run date of June 13, 2023, results in a new adjusted run date of December 12, 2023. Because Appellant's trial began on October 10, 2023, there was no Rule 600 violation.

We also reject Appellant's cursory argument that the delay in bringing him to trial deprived him of his constitutional right to a speedy trial under both the Pennsylvania and United States Constitutions. The United States Supreme Court has articulated

> a four-part test to be employed by courts in determining whether a particular defendant was deprived of his right to a speedy trial, under which a court is required to consider the length of the delay involved, the reason for such delay, the defendant's assertion of his or her right, and the prejudice to the defendant.

*Harth*, 252 A.3d at 615 (citing ***Barker v. Wingo***, 407 U.S. 514, 530 (1972)).

This Court has explained that,

> [u]nder the balancing test articulated in ***Barker***…, we first examine the threshold question of whether "the delay itself is sufficient to trigger further inquiry." ***Commonwealth v. Miscovitch***, 64 A.3d 672, 679 (Pa. Super. 2013). If the delay is sufficient to trigger further inquiry, we then "balance the length of the delay with the reason for the delay, the defendant's timely assertion of his right to a speedy trial, and any resulting prejudice to the interests protected by the right to a speedy trial." ***Id.***
>
> It is more difficult to establish a Sixth Amendment speedy trial violation than a Rule 600 violation, a fact demonstrated by decisions that the Sixth Amendment is not violated even when trial takes place a short time beyond the Rule 600 deadline. ***Commonwealth v. Preston***, 904 A.2d 1, 15 (Pa. Super. 2006) (citing ***Commonwealth v. Crowley***, 466 A.2d 1009, 1014 n.9 (Pa. 1983)).

***Commonwealth v. Lippincott***, No. 709 MDA 2019, unpublished memorandum at *5 (Pa. Super. filed April 13, 2020).

For the reasons set forth *supra*, Appellant's trial took place within the Rule 600 deadline; thus, we conclude there was no constitutional speedy trial violation. ***See id.*** ("Since trial in this case took place **within** the Rule 600 deadline, there was no Sixth Amendment speedy trial violation.") (emphasis in original). "Stated in terms of the ***Barker*** test, delays that do not result in a Rule 600 violation are not 'sufficient to trigger further inquiry' under ***Barker***." ***Id.*** (quoting ***Miscovitch***, 64 A.3d at 679).[4] No relief is due.

_____

[4] Appellant does not develop any argument that the Pennsylvania Constitution requires a different analysis than that under ***Barker*** and the Sixth Amendment.

In Appellant's third issue, he argues that the evidence was insufficient to sustain his conviction for carrying a firearm without a license because the Commonwealth failed to prove that he actually or constructively possessed the firearm "secreted under the rental vehicle's hood." Appellant's Brief at 40. Initially, we note that,

> [a]s a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.
>
> The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, the fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.
>
> Importantly, the fact-finder, which passes upon the weight and credibility of each witness's testimony, is free to believe all, part, or none of the evidence.

*Commonwealth v. Wright*, 255 A.3d 542, 552 (Pa. Super. 2021) (cleaned up).

Additionally, pertinent to Appellant's challenge to the Commonwealth's evidence proving his possession of the firearm,

> [t]his Court has held that possession can be found by proving possession, constructive possession, or joint constructive possession. Where a defendant is not in actual possession of the prohibited items, the Commonwealth must establish that the defendant had constructive possession to support the conviction. Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. We have defined constructive possession as conscious dominion, meaning that the defendant has the power to control the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be established by the totality of the circumstances.
>
> It is well established that, as with any other element of a crime, constructive possession may be proven by circumstantial evidence. In other words, the Commonwealth must establish facts from which the trier of fact can reasonably infer that the defendant exercised dominion and control over the contraband at issue.
>
> A defendant's mere presence at a place where contraband is found or secreted is insufficient, standing alone, to prove that he exercised dominion and control over those items. Thus, the location and proximity of an actor to the contraband alone is not conclusive of guilt. Rather, knowledge of the existence and location of the contraband is a necessary prerequisite to proving the defendant's intent to control, and, thus, his constructive possession.
>
> If the only inference that the fact finder can make from the facts is a suspicion of possession, the Commonwealth has failed to prove constructive possession. It is well settled that facts giving rise to mere association, suspicion or conjecture, will not make out a case of constructive possession.

*Id.* (cleaned up; some formatting altered).

Here, Appellant claims that he was merely present in a rental vehicle, which another passenger occupied. Appellant's Brief at 40. He observes that

- 18 -

he "did not display nervousness, make any incriminating statements asserting an ownership interest in the gun, and he did not resist the officers or attempt to flee." *Id.* (citations omitted). No other firearms were found among Appellant's belongings inside the car, and he made no "furtive movements or reach for any objects under the hood." *Id.* at 41. According to Appellant, the Commonwealth "repeatedly suggested that [he] possessed the gun because he also allegedly possessed the drugs in the car's passenger area. Such an inference is impermissible and it cannot support a finding that [Appellant] possessed a firearm." *Id.* (citing *Commonwealth v. Grahame*, 7 A.3d 810, 811 (Pa. 2010)). Appellant maintains that "[t]he evidence at trial failed to prove that [Appellant] even knew about a firearm, much less that he harbored both the power and intent to control one." *Id.* (citation omitted). He insists he was convicted solely "based on his mere presence with another person in a rented car that happened to contain an alleged firearm he knew nothing about." *Id.* at 42 (citation omitted).

Appellant's argument improperly construes the evidence in the light most favorable to him, rather than the Commonwealth as the verdict winner. "[G]iving the prosecution the benefit of all reasonable inferences to be drawn from the evidence[,]" as we must, *see Wright*, *supra*, we conclude that the evidence was sufficient to prove that Appellant constructively possessed the firearm. We find the facts cited by the Commonwealth, and the legal authority on which it relies, persuasive:

First, the fact that [Appellant] was the driver of the car permits the inference that he was aware of the car's contents. ***Commonwealth v. Valle***, 323 A.2d 74, 75 (Pa. Super. 1974) ("As the driver, the appellant was in control and possession of the vehicle including the trunk and as the case in the trunk was unlocked, it is reasonable to infer that he had knowledge of its contents…[.]"); ***Commonwealth v. Gladden***, 311 A.2d 711, 713 (Pa. Super. 1973) ("The fact that the appellee was the owner and driver of the vehicle was rather strong evidence that he was aware of its contents…[.]").

That the car was rented, rather than owned by [Appellant], does not negate this fact. *See **Commonwealth v. Kirkland***, 831 A.2d 607, 610 (Pa. Super. 2003) (finding constructive possession even though Kirkland did not own [the] car he was driving and narcotics were found in back seat). Indeed here, Detective [Sean] Gallagher, who was accepted as an expert in the illegal drug trade, testified that drug dealers often use rental cars to run their dealing operations so that their personal vehicle never risks exposure to police. [***See*** N.T. Trial, 10/10/23, at 294.] ***See also Commonwealth v. Wright***, 255 A.3d 542, 554 (Pa. Super. 2021) ("The fact that [the a]ppellant was not the owner of the vehicle, or the possibility that the firearm and narcotics may have been primarily possessed by someone else, did not render the evidence insufficient to prove [the a]ppellant's constructive possession, because more than one person may have constructive possession of an item at the same time." (citations omitted)).

Further, the location of the gun in the car lends support to [the] conclusion that [Appellant] knew of it and exercised control. In ***Commonwealth v. Haskins***, 677 A.2d 328, 330 (Pa. Super. 1996), constructive possession was established where Haskins was the driver of the car and the contraband was recovered from the glove compartment and trunk, which are "areas usually only accessible to the operator of a vehicle." Certainly, if Haskins can be deemed to be exercising control over drugs in a glove compartment, the fact that a loaded handgun was found in an even more unlikely location (wedged near the engine block under the hood of the car he drove) is similarly sufficient. ***See also Commonwealth Bentley***, 419 A.2d 85, 87 (Pa. Super. 1980) ("[T]he presence of a Colt .45 in a gym bag found in a portion of the vehicle not readily accessible to passengers would be sufficient to support an inference of [the] appellant's possession.").

Commonwealth's Brief at 31-33.

These facts make Appellant's case comparable to the cases cited by the Commonwealth, in which this Court found the evidence sufficient to prove constructive possession, and distinguishable from the cases cited by Appellant.  For instance, Appellant relies on **Commonwealth v. Boatwright**, 453 A.2d 1058 (Pa. Super. 1982), where Boatwright was a front-seat passenger in a vehicle with two other men in which a gun was found on "the left rear floor" of the car.  **Id.** at 1058.  The car was registered to the driver's girlfriend, and the gun was registered to a woman not present in the vehicle. **Id.** at 1059.  Because "[t]he only evidence other than [Boatwright's] mere presence was [an o]fficer['s] … testimony that [Boatwright] made a movement toward the left rear of the vehicle[,]" we concluded that the evidence was insufficient to prove that Boatwright constructively possessed the gun.  **Id.** at 1059.

Here, unlike in **Boatwright**, Appellant rented the car and was sitting in the driver's seat.  The gun was found secreted in the vehicle's engine block. It is reasonable to infer that the person who rented and drove the car was the individual who stashed the gun in the engine block of the car.  This is especially true where Appellant possessed drugs packaged for sale in the interior of the vehicle.  Although Appellant claims that we cannot infer that 'guns follow drugs' under **Grahame**, he misconstrues our Supreme Court's decision in that case.  There, the Court held that a "guns follows drugs" presumption cannot be made "in order to justify a protective search for weapons pursuant to **Terry v. Ohio**, 392 U.S. 1 … (1968)."  **Grahame**, 7 A.3d at 811.  In other words,

police cannot find drugs and then use that fact alone to infer that a person possesses a gun in order to conduct a ***Terry*** frisk.

Clearly, those are not the facts of the instant case. Here, Appellant possessed narcotics on his person, as well as the narcotics packaged for sale inside the vehicle he rented and was driving. ***Grahame*** does not preclude the reasonable inference that he also possessed the firearm that was subsequently found during the lawful search of his vehicle subsequent to a warrant. Accordingly, the evidence was sufficient to sustain Appellant's firearm conviction.

Lastly, Appellant avers that his 18-month sentence for possession of a controlled substance is illegal, as it exceeds the applicable one-year statutory maximum. Appellant explains that, "[i]n general, possessing a controlled substance in violation of [s]ection 780-113(a)(16) is an ungraded misdemeanor punishable by up to one year in jail." Appellant's Brief at 43 (citing, *inter alia*, 35 P.S. § 780-113(b) ("Any person who violates any of the provisions of clauses (1) through (11), (13) and (15) through (20) or (37) of subsection (a) shall be guilty of a misdemeanor, and … shall, on conviction thereof, be sentenced to imprisonment not exceeding one year….")). Appellant further claims that

> [t]he prosecution charged [Appellant] with possessing a controlled substance, and a jury convicted him of that ungraded misdemeanor offense. The prosecution at sentencing alleged that [Appellant] had three out of state "possession" convictions but offered no certified records.

*Id.* Appellant then contends that, "[f]or multiple reasons, the sentencing record is insufficient to trigger the provision's enhanced punishment," including that "the prosecution's statements at sentencing do not constitute evidence and cannot justify the sentence," and "drug convictions in other states do not trigger increased punishment." *Id.* at 43-44 (citing *Commonwealth v. Bivens*, 651 A.2d 1117, 1118 (Pa. Super. 1994) (concluding that a prior out-of-state conviction cannot be considered as an enhancement factor under 35 P.S. § 780-113(b)).

Notably, both the trial court and Commonwealth agree with Appellant that his sentence for possession of a controlled substance is illegal and must be vacated. *See* TCO at 9; Commonwealth's Brief at 35-36. The trial court also stated that, because the sentence was imposed to run concurrently, vacating it "does not impact the [c]ourt's sentencing scheme" and "remand for resentencing is not necessary." TCO at 9. We agree. Thus, we vacate Appellant's judgment of sentence for possession of a controlled substance, and we affirm his judgment of sentence in all other respects.

Judgment of sentence vacated in part, affirmed in part. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/14/2025